This case on calendar for argument is United States v. Norris All right. Please proceed, counsel. Thank you. Good morning, Your Honors. John Ballas on behalf of the defendant, Alexander Norris. I'm intending to reserve three minutes for rebuttal. All right. In this case, federal agents used sense-enhancing technology, sophisticated software with a directional antenna, to gather information about the interior of Norris' apartment that they could not otherwise have obtained without physically intruding into the apartment. By using this equipment to measure the electromagnetic radiation emanating from the apartment, agents were able to locate a computer inside Norris' apartment. Because they intruded into his home in this manner and so conducted a search without first obtaining a warrant, the search was unreasonable in violation of the Fourth Amendment. Our position is that this is a search requiring a warrant under the squareholding of the Kylo decision, and in that case the court held that when officers obtained by sense-enhancing technology information regarding the interior of the house that they could not otherwise have obtained without a physical intrusion into a constitutionally protected area, it's a search, at least where the technology is not in general public use. Now, unlike Kylo, Norris transmitted the signals to another residence. It wasn't his residence. He did. What he did was he accessed the neighbor's wireless router. The government's position is by doing so, both under the third-party doctrine as well as he lost any kind of subjective expectation of privacy. Our position is that there is still a reasonable expectation of privacy into his own home, and the reason is this. When he accessed the neighbor's router, admittedly without authorization, what he did was he transferred a signal there that allowed the neighbor to be able to obtain his IP address, his MAC address, and some information. And if the agents at that point took that information and then obtained a warrant or used that information in other lawful means, he'd have nothing to argue with. But here they took the MAC address, put it into this sophisticated technology called MutraHunter, and with a directional antenna used other information from his home that was not readily available to the neighbor. But he sent it out of the home, did he not? He sent a signal to the wireless router. Out of his home into a different home. Into a different. Right. But the agents also used other information that was not accessible to the neighbor. They took the radio waves that are emanating from his home, measured that with this device in multiple places, and then was able to determine the access where his ‑‑ where they thought it was likely that the computer was in. And, in fact, the technology was sophisticated. Help me with the technology here. As I understand it, the MutraHunter zoned in on the other router in the other premises. Isn't that what happened here? I'm not sure if it's technically the other router. I'm not a computer expert here. But, basically, it did determine where the radio waves are emanating from his computer and his hard drive. Well, it's where the radio waves ended, not where they originated. Isn't that right? Well, the radio waves emanating from his computer at all times, even if he wasn't accessing the neighbor's computer, all the MutraHunter needed was the MAC address, put it into the software, and then was able to read those radio waves, determine the strength, and in the same way a submarine uses sonar, was able to determine exactly where the computer was. In fact, in this case, they weren't only able to determine that it was in apartment 243, Mr. Norris's computer. The technology was sophisticated enough to say that the computer was likely located in the third floor southernmost bedroom of the apartment. So they were able to obtain, and that's at excerpt of record 172, they were able to obtain specific information about the interior of his home and where that computer was located that the neighbor would never have been able to determine. The government has said essentially two main arguments. One is under the third-party doctrine that because he gave the signal, some signal information to the neighbor, that he was given voluntarily access to it and there was no longer a reasonable expectation of privacy. I think it's important to note that the Supreme Court in Carpenter recently refused to extend that third-party doctrine. In our argument, it wouldn't apply anyway because the information that the agents used was not the information that went directly to the router. They used additional information, additional signal information that didn't go to the router.  Even if he had a subjective expectation, it's not one that society's prepared to recognize because of the unauthorized access. And I've kind of explained that in the sense that it only accesses, only certain signals go to the neighbor. It doesn't also, the agents had to use additional information that was beyond what went to the neighbor's router. And that's why I think the distinction is significant. The second argument here is a Frank's challenge going to the information that was in the search warrant affidavit. And the argument here is that the government failed to disclose significant information about the reliability of this software system and if it had given that information to the judge, that information was material and the judge would not have issued the warrant. And the motion to suppress listed a number of different items that the government's affidavit was not fully accurate or admitted. So, counsel, are you saying that the omissions to which you refer were intentionally or recklessly omitted? Yes, Your Honor. What evidence do you have of that, that it was intentionally or recklessly omitted? Well, I think that in some sense, you can infer from the importance of the information that was admitted that it was not done intentionally or recklessly. Of course, we didn't have a Frank's hearing, so we didn't able to present full hearing, full evidence on this. But essentially, there was no information that it was reliable in the affidavit. It admitted, it falsely stated that it was open source software when, in fact, it was proprietary software. But what difference does that make? Well, when software is open source, it's generally considered to be more reliable because it's open to peer review. Other people are able to test it, make corrections to it, determine the error rate. But that doesn't make the proprietary software unreliable. Well, compared to open source software, it's generally more reliable than proprietary. Exactly. But that doesn't mean that the proprietary software is not reliable. In and of itself, that is correct. Right. But that was one error in the affidavit along with others. It also, the FBI agents had not been trained in the software's use, while the website for the software specifically says that only trained operators should use it or it could give false results. Was there any indication that the FBI misused the software in any way? Well, part of it is the defense is a little bit hamstring here because some of the results or the testing results were lost by the government. And so the defense was able to use the readings from the software and determine exactly whether it was accurate. And that's why we wanted a full hearing on it. There was also the — Well, you think that that would undercut a probable cause determination? I think the cumulative effect of the omissions would have been material and would have undercut a probable cause determination. Well, but the omissions, as you argue,  And whether it's 100% reliable or 75% reliable wouldn't really make a difference to whether there was probable cause to issue the warrant, would it? Well, I think it's analogous to when the government presents information from an informant. You want some information about the credibility of the informant to show that the informant is reliable when you're using that. In the same way, when it just says it uses this software without accurate information about its reliability, it undercuts the probable cause. As well as the other aspect that was mentioned in Norris' search warrant motion was that it hadn't undergone formal FBI testing and that the officers didn't have appropriate training in it, as well as the fact that in some cases the software will give false readings when the MAC address of the device could be concealed through spoofing techniques. And with all the omissions and false statements in the affidavit cumulatively, it would have undercut probable cause. And I will reserve my remaining time for rebuttal. Thank you, counsel. We'll hear from the government. Good morning, Your Honor. May it please the Court, Matthew Morris. I represent the United States. I was one of the two prosecutors on this case in the district court. On the question of the motion to suppress, Your Honor,  because there's no reasonable expectation of privacy in the strength of the radio signals that Mr. Norris was using while hacking into his neighbor's router. Every judge, every court that has looked at this has applied Rackus v. Illinois and said when you're wrongfully trespassing, you don't have a reasonable expectation of privacy that society is prepared to recognize as reasonable. And I say every court. I'm talking about three district courts, Broadhurst and the district court in this case and the district court in Stanley. And all three judges on the Third Circuit in the Stanley panel, all agreed that Rackus is dispositive. When you're wrongfully trespassing across your neighbor's network to break the law, you don't have a reasonable expectation of privacy in the strength. Is it breaking the law for him to access wireless from his neighbor's home? We believe it is, Your Honor. We cited under California penal code, if you access someone's computer without authorization over a certain amount of time, that does qualify as a misdemeanor under California law. Nevertheless, even if it weren't against the California law, it's still wrongful. It's a trespass. And so as this Court in Cayman said, when we apply Rackus in the digital environment, a wrongful trespass is the same as wrongfully obtained by fraud, which is the same as wrongfully obtained by theft. Was that wireless system into which he intruded password protected? It was, Your Honor, which makes this a little bit more wrongful than the case in Stanley. So in the Stanley case in the Third Circuit, it was not a password protected router. In this case, the evidence showed that it was a password protected router. He had used his computer savvy to break the password to use his neighbor's internet wireless router. Counsel, would you respond to opposing counsel's point that notwithstanding the access to the signal in the router, which was not in his home, the process disclosed information that was in the home, if I understand the argument? We disagree on that, Your Honor. What we agree is that the FBI, standing in places at all times where they had the right to be, either the neighbor's apartment or common areas or an empty apartment, simply measured the strength of the radio signal being transmitted knowingly by Mr. Norris. And, again, only during times when he was hacking. What they were able to do then — And the strength alone tells you the source? The strength alone gave them enough to go back to a judge and say, we think there's a fair probability, probable cause, that this computer is in the neighboring apartment. One of the areas where they did keep the notes of the readings is at SER 79. That's one of their handwritten notes about the signal strength readings. And you'll see parts where they point an arrow and say 100 and other parts where it's numbers less than that. So is it your position that the equipment did not have to read any signal from his home? I'm not sure I understand the question. It certainly didn't intrude into his home. So the district court made the finding that there was no trespass. So at no point did the agents either physically or electronically go into his apartment. So how was the signal strength detected? Simply standing in other places, listening to what the strength of the signal is. So there's a declaration attached to our opposition to the motion to suppress where the CEO of the company that invented this particular version of the software talked about the relative signal strength. So it's sort of like if somebody made a complaint about loud music, you could stand in the entryway and try to figure which apartment is the music coming from without going into the apartment, just standing in the hallway and trying to figure out which apartment is this music coming from. That would be a very similar analogy, Your Honor. So an analogy would be the police standing, get called for loud music, stand on the street and say, which of these apartment buildings is the loud music coming from? Oh, it sounds like it's coming from that way. And then going, in that case, they would investigate without a warrant. In this case, after they said, it sounds like it's coming from that way, they then went back to the same judge and said, we'd now like to get a warrant to search that location. Or similarly, I know a technology that's developing right now is this shot spotter technology where microphones around a city say, we think we heard a gunshot from this location, and the police then respond to that, a similar idea. But all that they measured was the signal strength. The same thing that every one of us, when we turn on our iPhones and it says, which network do you want to connect to, and it gives you one, two, or three arcs of the strength of the wireless signal on your phone. But we've got to be careful not to go into one that we're not authorized to go into, right? Under both California law and you certainly don't want to use it to distribute child pornography through your neighbor's wireless router, Your Honor. Even if you have the password. That's absolutely right, Your Honor. We have maintained and we still maintain that separate from the wrongful possession argument is that the third party doctrine is appropriate here. We recognize that two of the three judges in the Third Circuit disagree with our position on that, which means that the opinion in the Third Circuit did not extend as far as we have argued, and therefore didn't extend as far as Judge Mueller in this case would have extended it. However, even though they didn't quite join Judge Mueller, even the Third Circuit does recognize at page 120 of their opinion that the third party doctrine is in play when they talk about the fact that Smith talks about people who knowingly transmit things outside of their home that you lose some expectation of privacy there. So even the Third Circuit, while rejecting the position we've taken, accepted that there is sort of an interplay here between the third party doctrine and the wrongful possession doctrine in these types of cases. I'll briefly talk about Kyllo before moving on then to the Franks hearing. In this case, the district court made a factual finding that Kyllo was inappropriate or didn't give any protection to the defendant because he was transmitting information outside of his apartment. It goes to the wrongfulness and it goes to what we think should be the Smith argument, but at the very least she made it also in the context of the Kyllo argument. That goes back, Judge O'Scanlan, to your question. This is different from Kyllo because Kyllo is a case where somebody is trying to keep their conduct confined within their house and law enforcement used information to kind of see what was going on inside there. This is a case where he knowingly transmitted outside the walls of his apartment. So it's really not Kyllo. Judge Mueller said that the Third Circuit in Stanley agrees that Kyllo doesn't apply. And the interception was outside the apartment. Absolutely, Your Honor. That's distinguished from Kyllo. Exactly. All right. Turning then briefly to the other questions on the motion to suppress. I'll talk about the Franks hearing or the request for a Franks hearing. Turning to that, I think, Judge Rawlinson, I think you hit on one of our issues here. There's no evidence of either reckless or intentional untruths. That is the requirement to show, to even get a Franks hearing. You have to make a substantial preliminary showing under Franks to even get the hearing. And in this case, the district court concluded correctly that there was no substantial preliminary showing of either reckless or intentional conduct. As to the alleged omissions, the district court meticulously analyzed all of those and went point by point and in some cases said, in light of what I've learned since, if they had given all of this information to the magistrate, probable cause would have increased. And that related, for example, to their training, the testing that they had done, as well as the resumes and curricula vitae of the agents. The only issue that she thought they could have done a better job of phrasing it for the judge was this question of open source software. The affiant on the search warrant said that he had interpreted open source to mean he didn't have to go through normal FBI procurement channels to buy it. So she suggested, Judge Mueller says, perhaps if he had been more fully describing this as not being open source, but free, there would have been more information. But she made the finding that that was not necessary to probable cause under Franks. That's the need. It has to be a material omission that was necessary to probable cause in order to get the Franks hearing. So for those reasons, likewise, the district court did not err in declining to order the Franks hearing. There was no substantial preliminary showing. And all of the complained alleged omissions were, in fact, either not omissions or misunderstandings by the defense or, in fact, would have increased probable cause. I see I've got some time left. I'll take any questions the panel has. And if not, I'd simply ask the court to affirm the district court's denial of the motion to suppress and denial for a Franks hearing. All right. Thank you, counsel. Rebuttal. I'd like to respond first to my opposing counsel's comments and the court's analogy to hearing loud music in the outside of an apartment. Mr. Morris stated that all the officers were doing was standing outside and measuring signal strength. The big difference here in this case between those two examples is that they use additional sophisticated sense-enhancing technology. They weren't just outside the apartment. You cannot measure radio waves without that sophisticated technology. It wasn't a situation where you're just using your ear and listening to music or radio waves. It's the fact of using this sophisticated technology with the directional antenna that puts it directly into the holding of Kylo. Well, is it more like where you use the technology to figure out whether there's heat coming from the building? Absolutely. And that's what Kylo used a thermal imager and said was a constitutive search, that when you use sense-enhancing technology that is not in general public use to obtain details of the interior of the home that you could not otherwise obtain except through a physical intrusion, it's a search. And the same is the matter here. But it detected the router, which was not in the home. Isn't that correct? This was the neighbor's router? So the neighbor's router was able to pick up the MAC address and the IP address. It could have used that information then to obtain a warrant. And then say, we would like to use this Muture Hunter software. We have this address. Because we're conducting a search, they could have easily done that. And then there would be nothing here to argue. In the Cayman case, the Ninth Circuit case, I think it's somewhat analogous. And the government used that to argue that when you obtain a laptop computer by fraud, you lose a reasonable expectation of privacy in it. But it's important that in that case, the law enforcement officers actually got a warrant to look for the laptop in the person's home. Because the home has the greatest degree of privacy under the Fourth Amendment. What the defendant was arguing in Cayman is that once they had the laptop computer, they needed a – it would be a search and need an additional warrant to actually look at the contents of the laptop. And that's the same kind of argument we're making here. They could have used – they could have, if they've gotten a warrant, used the Muture Hunter software and then determined the location of the home. That's the proper procedure to use. But because the Fourth Amendment, as a general presumption, makes searches without a warrant unreasonable, this search was unreasonable in violation of the Fourth Amendment. Thank you. Thank you, counsel. Thank you to both counsel. Case just argued is submitted for decision by the court. The final case on calendar for argument today is Riggs v. Airbus Helicopters, Inc.
judges: Schroeder, O'scannlain, Rawlinson